**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

RUTH M.,

                                      Plaintiff,

        v.

                                            No. 5:18-CV-01006
ANDREW SAUL,                                       (FJS/CFH)
Commissioner of Social Security,

                                       Defendant.
_____

| **APPEARANCES:** | **OF COUNSEL:** |
| --- | --- |
| Law Offices of Steven R. Dolson | STEVEN R. DOLSON, ESQ. |
| 126 North Salina Street, Suite 3B | |
| Syracuse, New York 13202 | |
| Attorneys for plaintiff | |
| | |
| Social Security Administration | HEATHER SERTIAL, ESQ. |
| Office of Regional General Counsel, | |
| Region II | |
| 26 Federal Plaza, Rm. 3904 | |
| New York, New York 10278 | |
| Attorneys for defendant | |

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER

      Plaintiff Ruth M.[1] brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner")

denying her applications for disability insurance benefits and supplemental security

income ("SSI") benefits.  See Dkt. No. 1 ("Compl.").  Plaintiff moves for remand for

---

[1]  In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation and Order will identify plaintiff by first name and last initial.

1

further proceedings, and the Commissioner cross moves for a judgment on the pleadings. See Dkt. Nos. 11, 13. For the reasons that follow, it is recommended that plaintiff's motion be granted, the Commissioner's motion be denied, and the matter be remanded for further administrative proceedings.

## I. Relevant Background

### A. Factual Background

Plaintiff was born in December 1981, and received an associate's degree in applied science and business. See T. 1065.[2] She lives with her mother, husband, and two children in a mobile home. See id. at 1063-1064. Plaintiff last worked some time in 2015 for approximately two weeks "doing sutures" in a doctor's office, but was "let go" because she could not perform her job duties fast enough due to issues with her hands. Id. at 1066. Prior to that, plaintiff worked from 2005 to 2010 at Dunkin Donuts where she "would open the store [and] run the drive-through." Id. Plaintiff also previously worked for Upstate Food Group, Wegman's, and Pizza Hut. See id. Plaintiff is right-handed. See id. at 1063.

According to a Function Report that plaintiff completed on May 9, 2015, plaintiff's daily activities consisted of taking care of her children, including waking them, getting them ready for school, and preparing their breakfast. See T. 297. Plaintiff also stated that she did "light cleaning" "depending on pain levels" and cared for the family's pet cat, but needed help doing the dishes and "cannot wash silverware" because she did not

---

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Dkt. No. 10-1. Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

have "feeling in [her] fingertips" and had cut her hands "more then [sic] once." Id. at 297, 299, 306. Plaintiff wrote that she was unable to walk, stand, or bend without pain, and that her pain prevented her from sleeping more than three to four hours per night. See id. at 297. She stated that she could walk "[a] block, [two] blocks on a good day," before needing to stop and take a rest, and experienced "constant pain" when walking due to sores and swelling in her feet and legs. Id. at 301, 303. She also indicated that she sleeps with wrist braces for her carpal tunnel, but does not use crutches, a wheelchair, or walker. See id. at 301, 302. However, plaintiff attended her hearing in a wheelchair and testified that she uses the wheelchair two or three times per week. See id. at 1077.

Further, plaintiff wrote that she could get dressed alone as long as she sat down to take her clothes out of the dresser. See T. 301, 302. She also stated that her husband helps her get in and out of the tub because she cannot shower without falling, and that her husband and mother help her brush and do her hair. See id. She noted that she sat down to shave and did not have any problem feeding herself or using the toilet. See id. She stated that she "pain in [her] shoulder and wrist make it hard to drive so [she] only drive[s] when [she] ha[s] to," and noted that she drives to doctors' appointments. Id. at 300. She stated that she went grocery shopping once per month for three hours, but needed to use a chair if she helped putting the groceries away because lifting and bending caused her pain. See id. at 295, 300. However, she also wrote that she could perform "light" lifting." Id. 301. In addition, she testified at the hearing that she does not grocery shop alone and that, if she goes to the grocery store, she stays in the car while her mother and husband shop. See id. at 1077. She stated

3

that she cannot use a scooter in the grocery store because "the last time [she] used a

scooter, [she] knocked off a roll of piggy banks in the store, because [she] can't feel

[her] hands" and "can't do the walking." Id. at 1077.


## B. Procedural Background

On May 4, 2015, plaintiff filed a Title II application for disability insurance

benefits. See T. 210-211. That same day, plaintiff also filed a Title XVI application for

SSI benefits. See id. at 202-209. In both applications, plaintiff alleged a disability onset

date of September 1, 2005. See id. at 202. The applications were initially denied on

July 20, 2015. See id. at 128. Plaintiff requested a hearing, which was held on June

22, 2017, before Administrative Law Judge ("ALJ") Gretchen Mary Greisler. See id. at

1057-1094. At the hearing, plaintiff amended her alleged disability onset date to March

31, 2015. See id. at 1060. On August 2, 2017, the ALJ rendered an unfavorable

decision. See id. at 8-21. On July 27, 2018, the Appeals Council denied plaintiff's

request for review, making the ALJ's findings the final determination of the

Commissioner. See id. at 1-7. Plaintiff commenced this action on August 22, 2018.

See Compl.


## II. Determination of Disability

### A. Legal Standard

"Every individual who is under a disability shall be entitled to a disability . . .

benefit . . . ." 42 U.S.C. § 423(a)(1)(E). Disability is defined as the "inability to engage

in any substantial gainful activity by reason of any medically determinable physical or

4

mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). A medically determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based on his or her age, education, and work experience. See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairments is "based [upon] objective medical facts, diagnoses or medical opinions inferable from the facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)) (additional citation omitted).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

5

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (spacing added). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. (citing Berry, 675 F.2d at 467).

## B. ALJ's Determination

Applying the five-step disability sequential evaluation, the ALJ determined that plaintiff had not engaged in substantial gainful activity since March 31, 2015, plaintiff's amended alleged onset date of disability. See T. at 11, 13. At step two, the ALJ found that plaintiff had the severe impairments of a spine disorder, tendinitis of the left shoulder, bilateral carpal tunnel syndrome, bilateral cubital tunnel syndrome, bilateral tarsal tunnel syndrome, dermatitis of the foot, obesity, and depression. See id. at 13. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See id. at 14. Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

6

> perform sedentary work as defined in 20 CFR 404.1567(a)
> and 416.967(a), and she is able to stand for [15] minutes at
> a time before needing to change positions for at least [10]
> minutes, but she retains the ability to remain on task.  She
> can sit for [30] minutes at a time before needing to change
> positions for five minutes, but she retains the ability to
> remain on task.  The [plaintiff] can occasionally twist, stoop,
> crouch[,] and climb ramps/stairs, but she is unable to climb
> ladders/ropes/scaffolds.  She can frequently handle, finger[,]
> and feel, and she can occasionally reach overhead.  The
> [plaintiff] can handle reasonable levels of simple, work-
> related stress, in that she can make simple decisions directly
> related to the completion of her tasks and work in a position
> where she is not responsible for the work of others and with
> little change in daily routine, work duties[,] or process.  The
> [plaintiff] is unable to tolerate exposure to extreme heat.

Id. at 16-17.  At step four, the ALJ found that plaintiff is unable to perform any past

relevant work.  See id. at 19.  At step five, the ALJ determined that, "[b]ased on the

testimony of the vocational expert, [and] considering [plaintiff's] age, education, work

experience, and [RFC], plaintiff was capable of making a successful adjustment to work

that exists in significant numbers in the national economy."  Id. at 21.  Thus, the ALJ

determined that plaintiff "ha[d] not been under a disability, as defined in the Social

Security Act, from March 31, 2015, through the date of this decision."  Id.

### C. The ALJ's Analysis of Opinion Evidence and Plaintiff's RFC

When evaluating a claim seeking disability benefits, factors to be considered by

the ALJ include objective medical facts, clinical findings, the treating physician's

diagnoses, subjective evidence of disability, and pain related by the claimant.  See

Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir. 1991).  Generally, more weight is

given to a treating source.  See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Under the

regulations, a treating source's opinion is entitled to controlling weight if well-supported

by medically-acceptable clinical and laboratory diagnostic techniques and if it is consistent with other substantial evidence in the record. See 20 C.F.R. § 404.1527(c)(2); id. § 416.927(c)(2); see also Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000) (stating that the "treating physician rule . . . mandates that the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence."). "This rule applies equally to retrospective opinions given by treating physicians." Jill D. v. Berryhill, 5:17-CV-1308 (CFH), 2019 WL 936523, at *3 (N.D.N.Y. Feb. 26, 2019) (internal quotation marks and citation omitted).

Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons." Schaal v. Apfel, 134 F.3d 496, 503, 505 (2d Cir. 1998); see 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Examples of "good reasons" to discount the opinions of a treating source include the following: the opinions are "inconsistent with the other substantial evidence in the record, such as the opinions of other medical experts," Williams v. Comm'r of Soc. Sec., 236 F. App'x 641, 643-44 (2d Cir. 2007) (summary order) (internal quotation marks and citation omitted); the opinions are "internally inconsistent," Micheli v. Astrue, 501 F. App'x 26, 28 (2d Cir. 2012) (summary order); the physician's relationship to the claimant is "limited and remote," Petrie v. Astrue, 412 F. App'x 401, 405 (2d Cir. 2011) (summary order) (internal quotation marks omitted); or the treating source lacked underlying expertise and gave only brief, conclusory opinions unsupported by clinical findings or other evidence. See 20 C.F.R. § 404.1527(c)(3), (5). When a treating physician's opinion is not given controlling weight, the ALJ is required to assess the following factors to determine the weight to be given to the medical

8

opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal, 134 F.3d at 503; see 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.197(c)(2)-(6).

RFC describes "what a claimant is capable of doing despite his or her impairments, . . . considering all relevant evidence, consisting of physical limitations, . . . physical abilities, symptoms including pain, and descriptions, including that of the claimant, of limitations which go beyond symptoms." Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (internal citations omitted); see 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient." Martone, 70 F. Supp. 2d at 150. The ALJ then uses the RFC to determine whether the claimant can perform his or her past relevant work. See 20 C.F.R. §§ 404.1545(a)(5)(i), 416.945(5)(i). If it is determined that a claimant cannot perform past relevant work, "the burden . . . shifts to the Commissioner to determine whether there is other work which the claimant could perform." Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of Social Security disability. See Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be

given weight if supported by medical evidence in the record."); Little v. Colvin, No. 5:14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted and citations). "An ALJ should consider 'all medical opinions received regarding the claimant.'" Reider v. Colvin, No. 15-CV-6517P (MWP), 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting Spielberg v. Barnhart, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)); see also SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) (explaining that "[t]he RFC assessment must be based on all of the relevant evidence in the case record.").  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant.  See 20 C.F.R. § 404.1527(c)(1)-(6).  Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); see also Snell v. Apfel, 177 F.3d 128, 133-34 (2d Cir. 1999) ("The final question of disability is . . . expressly reserved to the Commissioner.").

Here, the ALJ based her RFC determination on the opinions of Christina Caldwell, Psy. D. ("Caldwell"), the consultative psychiatric examiner, and Dr. Kalyani Ganesh ("Dr. Ganesh"), the consultative internal medicine examiner, to which she afforded great weight and partial weight, respectively.  See T. 17. The ALJ reasoned that Dr. Ganesh's opinion that plaintiff "had no limitations with regard to sitting, standing,

walking and use of the upper extremities[, aside from] mild limitations with regard to overhead activity," was "consistent with" plaintiff's daily activities, including the "ability to perform childcare, care for a pet, maintain personal care, prepare meals, drive, go out alone, perform light cleaning, manage money[,] and shop in stores." Id. at 17. "However," the ALJ reasoned, she did not "give [Dr. Ganesh's] opinion more weight, [because plaintiff] had an abnormal EMG/nerve conduction study, and Dr. Ganesh did not include any corresponding manipulative limitations." Id. Further, the ALJ afforded great weight to Caldwell's opinion, including, as relevant here, that plaintiff had "normal motor behavior, . . . coherent and goal directed thought process and impaired attention, concentration, and memory." Id. at 18. The ALJ found that Caldwell's opinion was consistent with that of plaintiff's social worker, Daniel Childers, L.C.S.W. ("Childers"), who opined that plaintiff was not unable to work due to mental health reasons, and was also consistent with plaintiff's daily activities. See id. The ALJ gave partial weight to Childers' opinion, noting that, as plaintiff's social worker, he was familiar with her and her mental impairments, but did not afford his opinion greater weight because he lacked the professional expertise of Caldwell. See id. at 19.

Moreover, the ALJ concluded that plaintiff's "medically determinable impairments could reasonably be expected to cause her alleged symptoms," including "fall[ing], . . . [some] difficulty with activities of daily living[,] numbness and tingling in her feet, and [the] use of a wheelchair a couple of times per week." T. 19. However, the ALJ found that plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record . . . ." Id. Thus, the ALJ determined, plaintiff "failed to produce

11

appropriate, probative evidence as required . . . to substantiate allegations of disabling symptoms. In the absence of such evidence, significant weight cannot be given to subjective complaints, no matter how intensely expressed." Id. (citations omitted). The ALJ reasoned that plaintiff's daily activities were "generally consistent with the [RFC]" and noted that Dr. Ganesh's findings that plaintiff had a normal gait, normal stance, the ability to rise from a chair without difficulty, full strength in her right upper extremity, full strength in both lower extremities, no sensory defects and no muscle atrophy were consistent with her primary care physician's notes from May 22, 2015, that plaintiff walks with "a normal gait" and had "intact" motor strength. Id. (citing T. 550). Further, the ALJ noted that plaintiff's physical therapy notes from "early January 2017" indicated that "she was able to make a fist with her fingers and extend to within normal limits"; "able to oppose her thumb to all fingers except her small finger"; and "could also adduct her fingers together." Id. at 18-19 (citing T. 694).

Finally, the ALJ afforded the opinion of Dr. Justin Beabes, DPM ("Dr. Beabes"), plaintiff's podiatrist, little weight. See T. 19. She observed that Dr. Beabes opined that plaintiff could sit more than two hours at a time and four hours over the course of a workday; stand or walk for fifteen minutes at a time and less than two hours during a workday; and opined concerning her lifting and carrying abilities. See id. She noted that Dr. Beabes "added that [plaintiff] would miss work more than four days per month" and "identified postural limitations, as well as significant manipulative limitations." Id. The ALJ proffered the following reasons for the weight afforded to Dr. Beabes opinion: (1) the vast majority of his opinion was outside his area of professional expertise; (2) his reliance on a diagnosis of peripheral neuropathy as the basis for the limits he

designated to plaintiff was beyond his area of expertise and not found elsewhere in the record; and (3) that his opinion was contrary to the other opinion evidence of record and inconsistent with plaintiff's activities of daily living.  See id.

### III. Discussion

### A. Standard of Review

A district court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  "Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence."  Terri G. v. Comm'r of Soc. Sec., No. 3:18-CV-0066 (CFH), 2019 WL 1318074, at *4 (N.D.N.Y. Mar. 22, 2019) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).  Substantial evidence is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted)).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012).

### B. Court's Analysis

### 1. The ALJ Properly Discounted Dr. Beabes' Opinion

Plaintiff first contends that the ALJ did not properly follow the treating physician rule by "fail[ing] to give good reasons for discounting the opinion of" her podiatrist, Dr. Beabes. See Dkt. No. 11 at 6. In particular, plaintiff argues that the ALJ erred by "mischaracteriz[ing] the record regarding the diagnosis of peripheral neuropathy," upon which Dr. Beabes based his opinion. Id.; see T. at 773. In support of this argument, plaintiff relies on the treatment note of her primary care physician, Dr. Carmen Federico ("Dr. Federico") from October 2016,[3] which states, "Assessment #9: G62.9 Polyneuropathy, unspecified"; and "Med Current: Gabapentin 300 mg 1 by mouth three times a day." T. 949; see Dkt. No. 11 at 7. In addition, plaintiff cites the most recent EMG test of her upper extremities from July 25, 2017. See Dkt. No. 11 at 7; T. 42. The Commissioner counters that plaintiff "misinterprets the ALJ's reasoning" in this regard, and argues that the ALJ properly discounted Dr. Beabes' opinion insofar as it presented conclusions as to plaintiff's limitations concerning the use of her upper extremities, as those opinions are outside of his professional expertise as a podiatrist. Dkt. No. 13 at 16.

As an initial matter, the ALJ properly declined to give weight to Dr. Beabes' opinion insofar as he stated that plaintiff is incapable of sustaining full-time work, as the final determination of disability and a claimant's inability to work ultimately rests solely with the Commissioner. See 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); see also Snell, 177 F.3d at 133-34. Next, plaintiff appears correct in arguing that her diagnoses of bilateral carpal tunnel syndrome, bilateral cubital tunnel syndrome, and bilateral tarsal tunnel syndrome constitute diagnoses of peripheral neuropathy. See Dkt. No. 11 at 6-

---

[3] The correct spelling is "Federico," not "Frederico." T. 947.

7.[4]  As such, the ALJ may have erred insofar as she concluded that a diagnosis of peripheral neuropathy "does not appear elsewhere in the record" outside of Dr. Beabes' opinion.  T. 19.  However, any error committed by the ALJ concerning the diagnosis of peripheral neuropathy was harmless because the specific aspects of Dr. Beabes' opinion that the ALJ discounted were inconsistent with other substantial evidence in the record and outside of his area of professional expertise.

In reaching her RFC determination, the ALJ specifically noted the following aspects of Dr. Beabes' opinion: (1) plaintiff's pain and symptoms would cause her to be off task 30% of the typical workday; (2) she would miss more than four days of work per month; and (3) plaintiff had significant postural limitations and manipulative limitations.  See T. 774-75.  In rendering her RFC determination, the ALJ observed that portions of Dr. Beabes' opinion were inconsistent with the record as a whole.  See id. at 19.  Therefore, although Dr. Beabes was plaintiff's treating podiatrist, the ALJ was required to examine the consistency of his opinion with the record as a whole in reaching her determination.  See Schaal, 134 F.3d at 503; 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.197(c)(2)-(6); see also Sinda v. Comm'r of Social Sec., No. 6:00-CV-0558 (GLS), 2004 WL 1305882, at *10 (N.D.N.Y. June 4, 2004) ("[W]here the medical evidence of record includes medical source opinions that are inconsistent with other evidence . . . , the ALJ must weigh all of the evidence and make a disability determination based on the totality of that evidence.").

---

[4]  Plaintiff provides that carpal tunnel syndrome is an example of mononeuropathy—a form of peripheral neuropathy.  See Dkt. No. 11 at 6 (citing https://www.mayoclinic.org/diseases-conditions/peripheral-neuropathy/symptoms-causes/syc-20352061).

A review of the record reveals that Dr. Beabes' opinions that plaintiff would be unable to remain on task for 30% of a workday and miss more than four workdays per month are unsupported by any treatment notes or diagnostic testing and inconsistent with Caldwell's opinion, which stated that plaintiff "evidenced mild limitations in ability to maintain attention and concentration." T. 486. His opinions in this regard are also inconsistent with Childers' opinion that plaintiff possessed adequate aptitude to engage in unskilled and semiskilled work and that plaintiff was not unable to work because of mental health reasons. See id. at 728. Although Childers also opined that plaintiff's "other medical reasons" could cause her difficulty in "working at a regular job on a sustained basis," nothing in the record supports Dr. Beabes' specific opinions that plaintiff would be unable to concentrate and stay on task for 30% of the workday or that she would miss more than four days of work per month. Id. Thus, as Dr. Beabes provides no basis for these opinions, which are inconsistent with the opinions of Caldwell and Childers, the ALJ properly weighed the record evidence and provided good reasons for affording his opinions little weight. See, e.g., Williams v. Comm'r of Soc. Sec., 236 F. App'x 641, 643-44 (2d Cir. 2007) (summary order) ("[T]he opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." (internal quotation marks and citation omitted)).

Moreover, as the ALJ determined, Dr. Beabes'—a podiatrist—lacked the requisite professional expertise and, therefore, was not an acceptable medical source to opine about plaintiff's cognitive abilities; thus, the ALJ properly afforded his opinions in

this regard little weight.  See T. at 19.  See 20 C.F.R. § 404.1502(a)(4) ("Acceptable

medical source means a medical source who is a: licensed podiatrist for impairments of

the foot, or foot and ankle only, depending on whether the State in which the podiatrist

practices permits the practice of podiatry on the foot only, or the foot and ankle[.]");

Isureal v. Berryhill, No. 3:15-CV-00221 (JAM), 2018 WL 1409797, at *2 (D. Conn. Mar.

21, 2018) ("[A] podiatrist is an acceptable medical source for purposes of establishing

impairments of the foot."); see also Laura B.-F. v. Comm'r of Soc. Sec., No. 2:17-CV-

146 (JMC), 2018 WL 9651144, at *6 (D. Vt. June 20, 2018) (noting that "good reasons"

for discounting the opinions of a treating medical source include that "the treating

source lacked underlying expertise and gave only brief, conclusory opinions

unsupported by clinical findings or other evidence." (internal quotation marks and

citation omitted)); see 20 C.F.R. § 404.1527(c)(3), (5).

Similarly, substantial evidence supports the ALJ's determination that Dr. Beabes'

opinions concerning plaintiff's purported manipulative limitations were "outside his area

of professional expertise" as a podiatrist.  See 20 C.F.R. § 404.1502(a)(4); Isureal, 2018

WL 1409797, at *2; see also SSR 96-9p, 1996 WL 374185, at *8 (explaining that

"manipulative limitations" involve limitations in "bilateral manual dexterity" and the ability

to "pick or pinch").  Indeed, Dr. Beabes' opinions concerning plaintiff's abilities to grasp,

turn, and twist objects with her hands, engage in fine manipulations with her fingers, or

reach with her arms, are unrelated to limitations of plaintiff's feet or ankles, and he

provided no basis for these opinions, which are unsupported by the record evidence.

See T. 774-74; see also 20 C.F.R. § 404.1502(a)(4); Isureal, 2018 WL 1409797, at *2;

Laura B.-F., 2018 WL 9651144, at *6.

In any event, the ALJ did not discount Dr. Beabes' opinions concerning plaintiff's postural limitations insofar as they related to her feet or ankles.  See T. 19.  Indeed, with respect to limitations concerning plaintiff's lower extremities, the ALJ's RFC determination is generally consistent with Dr. Beabes' opinion, including that plaintiff would be able to stand for 15 minutes at a time and occasionally twist, stoop, crouch, and climb stairs, and never climb ladders, ropes, or scaffolds.  See T. 16-17; T. 774-75; see also Warren v. Comm'r of Soc. Sec., No. 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *7 (N.D.N.Y. Nov. 18, 2016), report and recommendation adopted sub nom. Warren v. Colvin, 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016) (citing Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); see also Zongos v. Colvin, No. 12-CV-1007 (GLS), 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion).  Indeed, the ALJ's determination that plaintiff could perform sedentary work is consistent with Dr. Beabes' opinions with respect to the limitations involving her lower extremities.  See T. 16; 20 CFR §§ 404.1567(a), 416.967(a).  Thus, the ALJ appropriately discounted portions of Dr. Beabes' opinion and provided good reasons for doing so.

### 2. Dr. Ganesh's Opinion is Stale

Plaintiff next argues that the ALJ's RFC determination is not supported by substantial evidence because Dr. Ganesh's medical source statement is stale, as it was rendered on June 4, 2015, prior to her subsequent diagnostic studies, which she posits constitute "objective medical evidence showing a decline in [her] conditions."  Dkt. No. 11 at 2, 8.  The Commissioner contends that Dr. Ganesh's opinion is not stale because it "demonstrate[d] that [p]laintiff's conditions were in fact improving," and "subsequent evidence did not reveal a significantly different picture of her functioning."  Dkt. No. 13 at 14.  The undersigned agrees with plaintiff and recommends that the matter be remanded for further administrative proceedings.

"[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." Camille v. Colvin, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015) (internal quotation marks and citation omitted).  "A medical opinion may be stale if it does not account for the claimant's deteriorating condition."  Carney v. Berryhill, No. 16-CV-269 (FPG), 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017).  However, a medical opinion is not necessarily stale simply based on its age and a more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age.  See Andrews v. Berryhill, No. 17-CV-6368 (MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (holding that the ALJ did not err in relying on dated opinions where there was no indication the "[p]laintiff's condition had significantly deteriorated after the issuance of [the] opinions such that they were rendered stale or incomplete").

In determining plaintiff's RFC with respect to her physical limitations concerning her upper extremities, the ALJ relied solely on the opinion of Dr. Ganesh, which was

drafted on June 4, 2015—over two years before the ALJ issued her decision—and prior

to plaintiff undergoing three surgical procedures on her upper extremities. See T. 17,

474-77. Dr. Ganesh opined that plaintiff had a full range of motion in her spine,

somewhat limited range of motion in her left shoulder, full strength in her upper right

extremity, 4/5 strength in her left upper extremity, 5/5 grip strength bilaterally and intact

dexterity in her hands and fingers. See id. at 17, 476-77. Dr. Ganesh further opined

that plaintiff's carpal tunnel syndrome was in its "early stages and she d[id] not need

surgery." Id. at 474. However, just over two months after Dr. Ganesh's examination, on

August 25, 2015, plaintiff underwent left ulnar nerve decompression and ECTR surgery.

See id. at 615, 760. Thereafter, she underwent left open carpal tunnel release surgery

in January 2016, and right CT and median nerve surgery in June 2016. See id. at 581,

693. Thus, contrary to the Commissioner's argument, plaintiff's condition in her upper

extremities demonstrably deteriorated subsequent to Dr. Ganesh's June 2015 exam as

evidenced by the three surgical procedures—for which Dr. Ganesh's opinion does not

account. See id. at 474. Consequently, it was error for the ALJ to assign Dr. Ganesh's

opinion as it related to plaintiff's upper extremities great weight. See, e.g., Pagano v.

Comm'r of Soc. Sec., No. 16-CV-6537-FPG, 2017 WL 4276653, at *5 (W.D.N.Y. Sept.

27, 2017) ("[The doctor's] opinion was rendered before [the plaintiff's] surgery and

therefore does not account for [the plaintiff's] deteriorating condition. A stale medical

opinion, like one that is rendered before a surgery, is not substantial evidence to

support an ALJ's finding.") (citations omitted).

     Further, contrary to the Commissioner's argument, the record does not establish

that the condition of plaintiff's upper extremities consistently improved since Dr.

Ganesh's June 2015 examination. Dkt. No. 13 at 11. As an initial matter, the Commissioner's argument in this respect is flawed, as it relies on plaintiff's post-operative condition as a baseline for demonstrating improvement—which, as discussed above, fatally ignores evidence that plaintiff's condition deteriorated significantly subsequent to Dr. Ganesh's medical source statement. See id.; see also Pagano, 2017 WL 4276653, at *5. In contrast to Dr. Ganesh's June 2015 opinion which stated that plaintiff had "no sensory deficit" in her upper or lower extremities, T. 476, plaintiff's post-operative physical therapy notes drafted by her physical therapist, Heidi Hathaway ("Hathaway"), indicated that she lacked the ability to detect sensation in her left hand and fingers except on one occasion. Id. at 616. Further, Hathaway's final assessment of plaintiff's progression following her August 2015 surgery stated that, "[a]lthough [plaintiff] reports some relief after her treatments[,] she continues to have significant pain and paresthesias that limit her functional use of (B) UE's." Id. Also contrary to Dr. Ganesh's opinion that plaintiff had full strength in her upper right extremity, full range of motion in her right shoulder and wrist, and intact bilateral hand and finger dexterity, see id. at 476, 475, Hathaway's January 2017 physical therapy notes—drafted after plaintiff's June 2016 surgery—assessed plaintiff with "limited [range of motion], decreased strength[,] and decreased functional use of her right [upper extremity]" and noted that plaintiff was "tight and guarded with all PROM secondary to pain and UNLT." Id. at 693. Although, as the ALJ observed, Hathaway noted that plaintiff was able to "make a fist with her [right] fingers," "oppose thumb to all fingers except small finger is a slight lag," and "adduct her fingers together," id. at 694, Hathaway also noted that plaintiff had "[p]ain and tenderness," "[i]nflammation," "[l]imited ROM/ULNT,"

"[d]ecreased strength," "[d]ecreased functional use of right elbow, wrist[,] and hand"

after 14 sessions of physical therapy following her June 2016 surgery.  Id. at 696.

Moreover, the ALJ expressly stated that she did not afford more weight to Dr.

Ganesh's opinion because plaintiff "had an abnormal EMG/nerve conduction study, and

Dr. Ganesh did not include any corresponding manipulative limitations."  T. at 17; see

id. at 688-89; 729-730.  In particular, plaintiff's February 2, 2017 EMG study, which was

characterized as an "[a]bormal study," indicated

> (1) Moderate to severe left carpal tunnel syndrome.
> However, the median sensory and motor nerve conduction
> studies are much improved compared to presurgical EMG
> testing in 2015, as these responses were absent at that time.
> In particular, the sensory response is significantly improved.
> There is acute denervation present in the abductor pollicis
> brevis, which suggests possible injury to the recurrent
> branch of the median nerve.
> (2) Moderate left ulnar neuropathy at the elbow.

T. 688-89; 729-730.  Although this study indicated that plaintiff's left median sensory

and motor nerve conduction studies showed improvement compared to her presurgical

EMG testing from 2015, Dr. Ganesh's opinion does not include any discussion of

plaintiff's presurgical EMG testing.  See id.  In addition, plaintiff's July 25, 2017 sensory

nerve conduction study indicated

> (1) Electrodiagnostic evidence of bilateral moderate median
> compression neuropathies at the wrist, consistent with the
> clinical diagnosis of [c]arpal tunnel [s]yndrome.
> (2) Electrodiagnostic evidence of bilateral ulnar motor
> demyelinating[5] neuropathies of unclear clinical significance r
> [sic] it could be related to a peripheral neuropathy.
> (3) Electrodiagnostic evidence of left C6 and C7
> radiculopathies.[6]

---

[5] Demyelination is the "[l]oss of myelin with preservation of the axons or fiber tracts."  Steadman's Medical Dictionary 509 (28th ed. 2006).

[6] Radiculopathy is s "[d]isorder of the spinal nerve roots."  Id. at 1622.

T. 42. Thus, subsequent diagnostic testing potentially indicates degeneration of plaintiff's physical condition unaccounted for in Dr. Ganesh's June 2015 medical opinion statement. See id. at 476.

As discussed above, the ALJ properly discredited Dr. Beabes' opinion with respect to plaintiff's limitations with her upper extremities. See subsection III.B.1., supra. Therefore, the ALJ's RFC determination concerning plaintiff's upper extremities limitations was premised solely on Dr. Ganesh's June 2015 opinion, which was not based on a complete medical record and, therefore, not supported by substantial evidence. See Pagano, 2017 WL 4276653, at *5; see also Girolamo v. Colvin, No. 13-CV-06309 (MAT), 2014 WL 2207993, at *8 (W.D.N.Y. May 28, 2014) (concluding that the ALJ erred in assigning "great weight" to medical source statement that was "based on an incomplete record since it was rendered November 2010 *before* the plaintiff's 2011 surgery and related diagnostic testing."); Biro v. Comm'r of Soc. Sec., 335 F. Supp. 3d 464, 471 (W.D.N.Y. 2018) (holding that the ALJ's RFC determination based solely on a stale medical opinion, rendered before the plaintiff's surgery, was unsupported by substantial evidence). Thus, the ALJ improperly reached her RFC determination without supporting medical opinion evidence. See Henningsen v. Comm'r of Soc. Sec. Admin., 111 F. Supp. 3d 250, 271 (E.D.N.Y. 2015) (holding that an ALJ may not "ma[ke] an RFC determination in the absence of expert medical opinion.") (internal quotation marks and citation omitted)). Moreover, this is not a case in which plaintiff's impairments are minor such that the ALJ "was within [her] discretion to make a common[]sense judgment concerning [plaintiff's] limitations, and no medical opinion evidence was necessary." Lilley v. Berryhill, 307 F. Supp. 3d 157, 161 (W.D.N.Y. 2018)

23

(internal quotation marks and citations omitted). Under these circumstances, it was necessary for the ALJ to rely upon a medical source's opinion in considering the limitations, if any, associated with plaintiff's upper extremities impairments. See Perkins v. Berryhill, No. 17-CV-6327 (FPG), 2018 WL 3372964, at *4 (W.D.N.Y. July 11, 2018) (holding that the ALJ cannot render a commonsense judgment about a claimant's functional capacity where the record "contain[s] complex medical findings and do[es] not suggest only minor impairment.").

In sum, as the ALJ relied on a stale medical opinion in considering plaintiff's limitations with respect to her upper extremities in rendering the RFC, her determination was unsupported by substantial evidence. Consequently, remand of this matter for further administrative proceedings, during which the record can be appropriately developed, potentially including obtaining updated medical assessments of plaintiff, is necessary. Because the undersigned has determined that remand is required based on the foregoing reasons, the undersigned declines to reach plaintiff's remaining arguments.

## IV. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**RECOMMENDED**, that plaintiff's motion (Dkt. No. 11) be **GRANTED**; and it is further

**RECOMMENDED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) be **DENIED**; and it is

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.

**IT IS SO ORDERED.**

Dated: February 18, 2020
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge